UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
YVONNE CRONIN and THOMAS CRONIN,

                        Plaintiffs,                            **MEMORANDUM AND ORDER**
                                                          2:18-cv-00573 (DRH)(AKT)

     - against -

UNITED STATES OF AMERICA,

                        Defendant.
--------------------------------------------------------X

**APPEARANCES**

**For Plaintiffs:**
McCabe, Collins, McGeough, Fowler, Levine & Nogan, LLP
346 Westbury Avenue
P.O. Box 9000
Carle Place, NY 11514
By:    Thomas J. Nogan, Esq.

**For Defendant:**
Seth D. DuCharme
United States Attorney
Eastern District of New York
610 Federal Plaza, 5th Floor
Central Islip, NY 11722
By:    Diane C. Leonardo-Beckmann, Esq.

**HURLEY, Senior District Judge:**

## INTRODUCTION

Yvonne Cronin ("Yvonne") and Thomas Cronin ("Thomas") (collectively the "Cronins"
or "Plaintiffs") brought this action against Defendant the United States of America
("Defendant") pursuant to the Federal Torts Claims Act, 28 U.S.C. § 1346 et. seq. ("FTCA") for
negligence.  Plaintiffs allege injuries as a result of Yvonne falling at premises owned by the
United States Post Office located at 25 New York Route 111, Smithtown, New York (the "Post
Office").  (Compl. [ECF No. 1].)

Presently before the Court are Plaintiffs' and Defendant's cross motions for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56.  For the reasons set forth below, Defendant's motion is granted and Plaintiffs' motion is denied.

## BACKGROUND

The following facts come from the parties' Rule 56.1 Statements and the declarations submitted in support of the parties' respective motions and are undisputed unless otherwise noted.[1]

Plaintiff Yvonne's Alleged Fall at the Post Office

Yvonne went to the Post Office in Smithtown, New York on December 18, 2016, a Sunday, at approximately 12:30 p.m. to mail some packages.  (Def.'s R. 56.1 Stmt [ECF No. 34-2] ¶¶ 1-2; Pls.' R. 56.1 Stmt. [ECF No. 32-2] ¶ 1.)  Shortly thereafter, Yvonne fell near the entrance vestibule of the Post Office.  (Pls.' R. 56.1 Stmt. ¶¶ 1, 23.)[2]  The nature of the weather that day was "sleety, misty rain."  (Def.'s R. 56.1 Stmt ¶ 6; Def.'s R. 56.1 Stmt Resp. ¶ 2.)  The sidewalk in front of the Post Office was damp and wet, but no puddles had formed and Yvonne did not see water on the floor before she fell.  (Def.'s R. 56.1 Stmt ¶¶ 7-9.)  Around 10 to 15 minutes later, Yvonne photographed the area where she allegedly fell.  (Pls.' R. 56.1 Stmt. ¶ 24.)

Whether the Post Office Was Open

The parties dispute whether the Post Office was open on the day of Yvonne's alleged fall.  Defendant contends that it was not; Plaintiffs agree that the retail service counter was not open but asserts that other Post Office functions were open and operational.

---

[1] Only those facts relevant to the legal analysis are included.  In that vein, the Court notes that the parties dispute the admissibility of certain exhibits.  The Court will only address the exhibits that are relevant to the analysis at hand and makes no judgment as to the admissibility of the disputed exhibits that are not relevant to the issues discussed herein.

[2] Defendant does not admit that Yvonne actually fell, only that she testified that she fell.  (Def.'s R. 56.1 Stmt. Resp. [ECF No. 32-2-] ¶ 23.)

Section 126.43 of the Postal Operations Manual ("POM") provides: "at the postmaster's discretion, lobbies may remain open 24 hours a day to allow customers access to PO Boxes and self-service equipment, provided that customer safety and security provisions are deemed adequate by the Inspection Service." (Formichella Decl. [ECF No. 34-10] ¶ 5.)  The Post Office's retail service counter, located adjacent to the lobby, is closed on Sundays, however the lobby is open 24 hours a day, 7 days a week for self-service and customer access to post office boxes.  (Def.'s R. 56.1 Stmt ¶¶ 16-17.)  The Post Office is also open on Sundays by appointment for passport applications, though Defendant asserts that it was closed on Sundays in December 2016.  (Pls.' R. 56.1 Stmt ¶ 6; Formichella Decl. ¶ 7.)

The Post Office retained a "skeleton [custodial] crew" on Sundays with one custodian on duty.  (Def.'s R. 56.1 Stmt ¶ 25.)  Accordingly, "[o]n December 18, 2016, no one was working in the front lobby area of the post office, but a custodian would go through and check the lobby." (Def.'s R. 56.1 Stmt ¶ 19.)  The custodian on duty that Sunday was John Kress, who worked from 6:00 a.m. to 2:00 p.m.  (Pls.' R. 56.1 Stmt ¶ 3; Def.'s R. 56.1 Stmt Rep. ¶ 17.)  "[W]hen reporting for work, [Mr. Kress] usually takes a tour of the building and premises to asses any potential emergencies and determines what needs to be addressed."  (Def.'s R. 56.1 Stmt ¶ 22.) His "practice and procedure is, and was, to check the vestibule area before leaving for the day, including on December 18, 2016."  (Def.'s R. 56.1 Stmt ¶ 26.)  In addition to Mr. Kress, there were other postal employees working in the rear of the building throughout the day in order to deliver packages.  (Pls.' R. 56.1 Stmt ¶ 5; Def.'s R. 56.1 Stmt Rep. ¶ 5.)  There were no employees, however, working in the front lobby area of the Post Office.  (Def.'s R. 56.1 Stmt ¶ 19.)

Placement of Mat at Post Office Entrance

The Post Office maintains a floor mat at in the vestibule area to "absorb[] water and cover[] a grille that is meant to trap water." (Def.'s R. 56.1 Stmt ¶ 20.) Based on a photograph Yvonne took on the day of the alleged incident, the floor mat is located in the vestibule area, "approximately 1 foot behind the exterior entrance doors." (Pls.' R. 56.1 Stmt ¶ 25; Def.'s R. 56.1 Stmt Rep. ¶ 25.) According to Mr. Kress, the mat in the vestibule area has been in the same spot for the 25 years that he has worked at the Post Office. (Def.'s R. 56.1 Stmt ¶ 23; Pls.' R. 56.1 Stmt. ¶ 7.)

The USPS Floor Care and Maintenance Handbook ("Handbook") states as a "guideline" under a section titled "Wet Floors": "During rainy or snowy weather, place safety matting in employee/customer entrances, such as lobbies and vestibules."[3] (Pl.'s R. 56.1 Stmt ¶ 36 (citing Ex. 11 (Handbook) [ECF No. 32-13] at 5.)) In a section titled "Floor Mats", the Handbook states: "Floor mats should be large enough to allow each foot to be wiped off at least once. Mats should be placed in lobbies, vestibules, and other entrances during rainy or snowy weather…" (Ex. 11 (Handbook) [ECF No. 32-13] at 6.)

---

[3] Defendant objects to Plaintiffs' citations to the U.S. Postal Service Handbook on the basis that the Handbook is not admissible. In support of its position, Defendant cites *Harper v. U.S.*, which relied on a First Department case for the proposition that an internal rule of a government entity cannot create a higher standard of care than that established by the prevailing law. 949 F. Supp. 130 (E.D.N.Y. 1996). That First Department case found the relevant internal government entity rule inadmissible because "[w]hile internal operating rules may provide some evidence of whether reasonable care has been taken and thus some evidence of the defendant's negligence or absence thereof, such rules must be excluded, as a matter of law, if they require a standard of care which transcends the area of reasonable care." *Lesser v. Manhattan and Bronx Surface Transit Operating Authority*, 157 A.D.2d 352, 556 N.Y.S. 2d 274, 276 (1st Dept. 1990). The discussion of the U.S. Postal Service Handbook here, however, is not in the context of the standard of care but in the context of the discretionary function exception, which exception was not discussed in the *Harper* case. Furthermore, Defendant cites to portions of the Handbook in its brief in support of its argument that the discretionary function exception applies. Accordingly, the Court will consider the Handbook in the context of its discussion about the applicability of the discretionary function exception.

## DISCUSSION

### I.      Legal Standard for Summary Judgment

Summary judgment pursuant to Rule 56 is appropriate only where admissible evidence in

the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of

a genuine issue of material fact, and one party's entitlement to judgment as a matter of law.  *See*

*Viola v. Philips Med. SYS. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994).  The relevant governing

law in each case determines which facts are material; "only disputes over facts that might affect

the outcome of the suit under the governing law will properly preclude the entry of summary

judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  No genuinely triable

factual issue exists when the moving party demonstrates, on the basis of the pleadings and

submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the

non-movant, that no rational jury could find in the non-movant's favor.  *Chertkova v. Conn.*

*Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996).

To defeat a summary judgment motion properly supported by affidavits, depositions, or

other documentation, the non-movant must offer similar materials setting forth specific facts that

show that there is a genuine issue of material fact to be tried.  *Rule v. Brine, Inc*., 85 F.3d 1002,

1011 (2d Cir. 1996).  The non-movant must present more than a "scintilla of evidence," *Del. &*

*Hudson Ry. Co. v. Consol. Rail Corp*., 902 F.2d 174, 178 (2d Cir. 1990) (*quoting Anderson*, 477

U.S. at 252) (internal quotation marks omitted), or "some metaphysical doubt as to the material

facts," *Aslanidis v. U.S. Lines, Inc*., 7 F.3d 1067, 1072 (2d Cir. 1993) (*quoting Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586-87 (1986)) (internal quotation marks

omitted), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on

"mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

The district court considering a summary judgment motion must also be "mindful . . . of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the "evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). "[W]here the nonmovant will bear the ultimate burden of proof at trial on an issue, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Id*. at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that his claim is not 'implausible.'" *Id.* at 211 (citing *Matsushita*, 475 U.S. at 587).

## II.    Plaintiffs' Claims

As noted above, Plaintiffs' action is brought pursuant to the FTCA, specifically 28 U.S.C. §§ 1346(b)(1) and 2674. Plaintiff Yvonne brought a claim for negligence in connection with her alleged fall at the Post Office, and Plaintiff Thomas brought a claim as Plaintiff Yvonne's husband for loss of services and society of his wife. Plaintiffs seek $750,000 in damages for Plaintiff Yvonne and $150,000 in damages for Plaintiff Thomas, plus costs and fees. (Compl. [ECF No. 1].)

### III.    Defendant's Motion for Summary Judgment is Granted

#### A.  Discretionary Function Exception

The FTCA provides jurisdiction in the federal courts and waives the sovereign immunity

of the United States in claims involving injuries "caused by the negligent or wrongful act[s] or

omission[s]" of government employees, subject to certain exceptions.  28 U.S.C. § 1346(b)(1).

Defendant argues that one such exception, the discretionary function exception, applies here and

deprives the Court of subject matter jurisdiction over this case.

The discretionary function exception exempts from the FTCA's grant of jurisdiction

"[a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a

discretionary function or duty on the part of a federal agency or an employee of the Government,

whether or not the discretion involved be abused."  28 U.S.C. § 2680(a).  Courts must therefore

dismiss claims based on the performance of discretionary functions for lack of subject matter

jurisdiction.  *See Fazi v. United States*, 935 F.2d 535, 539 (2d Cir. 1991).

The discretionary function exception applies only if two conditions are met: "1) the acts

alleged to be negligent must be discretionary, in that they involve an element of judgment or

choice and are not compelled by statute or regulation; and 2) the judgment or choice in question

must be grounded in considerations of public policy or susceptible to policy analysis."

*Coulthurst v. United States*, 214 F.3d 106, 109 (2d Cir. 2000) (internal citations and quotations

omitted).  For the first condition, a court must determine whether the challenged act or omission

violated a mandatory regulation or policy that allowed no judgment or choice.  *United States v.*

*Gaubert*, 499 U.S. 315, 324, 111 S. Ct. 1267, 113 L. Ed. 2d 335 (1991).  "The requirement of

judgment or choice is not satisfied if a 'federal statute, regulation or policy specifically

prescribes a course of action for an employee to follow,' because 'the employee had no rightful

option but to adhere to the directive.'" *Id.* at 322 (quoting *Berkovitz v. United States*, 486 U.S. 531, 536, 108 S. Ct. 1954, 100 L. Ed. 2d 531 (1988)).  By contrast, "the discretionary function exception bars claims based on day-to-day management decisions if those decisions require judgment as to which of a range of permissible courses is wisest." *Fazi,* 935 F.2d at 538. "When there are government regulations bearing on day-to-day decisions, applicability of the discretionary function exception depends largely on whether or not the regulation specifically 'mandates particular conduct.'" *Id.* (quoting *Gaubert*, 499 U.S. at 324).

If a court finds that the challenged conduct involves an element of judgment, the court must then determine if the challenged actions are the kind of conduct "'that the discretionary function exception was designed to shield.'" *Berkovitz*, 486 U.S. at 536.  The conduct must be "grounded in the policy of the regulatory scheme." *Gaubert*, 499 U.S. at 325.  Where the applicable statutory and regulatory scheme "allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Id.* at 324.

### a.  Conduct at Issue

Defendant contends that the discretionary conduct at issue here is the decision to allow 24-hour access to the Post Office self-service lobby whereas Plaintiffs contend the discretionary conduct at issue is the placement of the floor mats in the Post Office lobby.  Numerous courts in other districts and circuits across the country have addressed this issue in cases with nearly identical fact patterns and found that the discretionary conduct is the decision to maintain after-hours access to the post office lobby.

A case particularly on point is *Krey v. Brennan*.  2017 WL 2797491 (D. Md. June 28, 2017), *aff'd sub nom Krey v. United States*, 734 F. App'x 203 (4th Cir. 2018).  The plaintiff in

that case fell in the lobby area of a post office in Bethesda, Maryland on a rainy night after

regular business hours.  That post office also allowed 24-hour lobby access for certain services in

line with the discretion afforded by the POM.  Plaintiff in that case argued as the Plaintiffs do

here that the discretionary act at issue was not the post master's decision to keep the lobby open

24 hours, but rather the failure to place additional matting on the lobby floor or post warning

signs on the evening in question, as prescribed in the Handbook.  *Id.* at *3.  Relying on similar

cases in the Fourth and Sixth Circuits, the *Krey* court found that the discretionary conduct at

issue was the decision to leave the post office open: "Although the POM mentions safety

provisions, 'nothing about [the POM] suggests that it mandates the specific procedures for wet

floor maintenance maintained in the Postal Service Maintenance Handbook.'"  *Id.* at *4 (citing

*Hogan v. U.S. Postmaster Gen.*, 492 Fed. App'x 33, 36 (11th Cir. 2012) (per curiam)).

Plaintiffs try to distinguish the case law in a few ways.  First, Plaintiffs argue that the

Post Office was in fact open on the Sunday when Yvonne allegedly fell.  Plaintiffs draw this

conclusion from various factors, including that if the Post Office were not open throughout the

month of December it would lose money and that some staff were present in the Post Office on

the day in question.  (Pl.'s Mem. in Opp. [ECF No. 34-11] ¶¶ 12, 16.)  In this respect, Plaintiffs

point to the following language in the *Krey* opinion: "Quite clearly the US could not maintain the

standard in the Maintenance Handbook while exercising discretion to leave the lobby open and

unstaffed."  (Pls.' Mem. in Opp. ¶ 15 (citing *Krey*, 2017 WL 2797491, at *4).)  Plaintiffs assert

that on the day in question, Mr. Kress was "performing his usual and customary duties of

maintaining the Post Office, including [inter alia] putting the mat in the vestibule."  (*Id*. ¶ 16.)

Further, "Plaintiffs['] contention is that the lobby counter being closed has no bearing on the

maintenance Mr. Kress performed.  The mat would have been misplaced whether the counter

was open or closed." (*Id.* ¶ 22.)

Despite Plaintiff's creative arguments that the Post Office was open in some sense, it is

undisputed that the Post Office was closed to retail customers, save for a 24-hour self-service

lobby area where a customer such as Plaintiff could mail a package herself.  The Post Office's

reported hours of operation conclusively state as much.  (Nogan Aff. Ex. 14 [ECF No. 32-16]

("Internet posting of hours of operation for the Smithtown Post Office") (indicating hours for

Sunday as follows: Retail Hours (Closed); Lobby Hours (24 hours); Last Collection Times

(Closed); Passport Appointment Hours (10:00 a.m. – 3:00 p.m.)[4]; Bulk Mail Acceptance Hours

(Closed)).)   The fact that it was a busy time of year and there were employees in the back office

does not change the reality that the Post Office was closed from the perspective of a customer

mailing a package.  Nor do Plaintiffs' arguments create a genuine dispute of material fact

because there is no genuine dispute that the Post Office was closed to retail customers on

December 16, 2018.

Thus, no rational trier of fact could conclude that the Post Office was in fact open on

Sunday, December 16, 2018 in the sense that Plaintiffs argue it was.  Though there may have

been some staff present and performing certain duties on December 16, 2018, it is undisputed

that the only part of the Post Office open to customers was the lobby, where customers had

access to PO Boxes and self-service equipment.  Indeed, Plaintiffs admit "the counter was not

open for people to walk up to and they had to use a self-service machine." (Pls.' Mem. in Opp. ¶

24.)  Furthermore, "[n]othing about [the POM] suggests that it mandates the specific procedures

---

[4] As noted above, Annette Formichella, the Postmaster of the Smithtown Post Office from 2016
to 2018, asserts that the passport window was closed on Sundays in December 2016.
(Formichella Decl. ¶7.)

for wet floor maintenance contained in the Postal Service Handbook during the time the retail

store is closed, even if a Postal Service employee is 'on duty' in another portion of the facility."

*Durham v. United States*, 2019 U.S. Dist. LEXIS 40174, *8 (N. D. Ga. Jan. 31, 2019), *appeal*

*dismissed*, 2019 WL 4744219 (11th Cir. May 20, 2019).

　　　　Plaintiffs also distinguish the case law on the basis that, unlike the cited cases, they allege

a "longstanding condition and not simply the fact that mopping was not properly performed."

(Pls.' Mem. in Supp. [ECF No. 38] ¶ 6.)  Plaintiff does not offer any case law in support of this

distinction.  Defendant, on the other hand, argues, and the Court agrees, that the various cases on

this issue establish that the relevant conduct for purposes of the discretionary function analysis is

the decision to keep the Post Office open on a 24-hour basis.  (Def.'s Mem. in Opp. [ECF No.

32-19] at 4.)  And those cases clearly state that the Postal Service Handbook does not *mandate*

procedures for wet floor maintenance. [5]  *See, e.g., Durham*, 2019 U.S. Dist. LEXIS 40174, at *8;

*Krey*, 2017 WL 2797491, at *4.  Furthermore, the Eleventh Circuit rejected similar arguments in

a factually analogous case.  *Hogan*, 492 F. App'x at 35 (rejecting as "too narrow" plaintiff's

characterization of conduct as failure to follow Handbook guidelines regarding cleanup of water

accumulation).  Thus, the Court finds that the conduct at issue for purposes of the discretionary

function test is the decision to maintain 24-hour access to the lobby of the Post Office.

　　　　　　b.  *Application of Discretionary Function Test*

　　　　Having found that the discretionary conduct at issue was the decision to maintain 24-hour

access to the lobby of the Post Office, the Court proceeds to determine whether the discretionary

function exception applies to that conduct.  As noted above, the POM provides that "[a]t the

---

[5] In any event, it is undisputed that there was a mat in the vestibule area, which is all that the Handbook requires.  The Handbook does not make reference to the exact placement of the mat within the vestibule area.

postmaster's discretion, lobbies may remain open 24 hours a day to allow customers access to

PO Boxes and self-service equipment, provided that customer safety and security provisions are

deemed adequate by the Inspection Service."   (Formichella Decl. ¶ 5.)  And, as has also been

noted, there is no indication that the wet floor maintenance procedures outlined in the Postal

Service Maintenance Handbook were mandatory.  Thus, the Court agrees with the reasoning in

*Krey*, *Hogan*, and other similar cases cited in Defendant's brief that the postmaster's decision to

allow 24-hour access to the lobby satisfies the first prong of the discretionary function test.

With respect to the second prong of the discretionary function test, "[t]he decision to

leave the lobby open is an operational decision that requires an evaluation of the costs to the

government and the benefit to the community."  *Krey*, 2017 WL 2797491, at *5; *see also*

*Williams v. United States*, 2018 WL 5077652, at *3 (W.D. Va. Oct. 18, 2018) ("The []

postmaster's decisions regarding public access to post office boxes after hours and snow and ice

removal during these hours require an evaluation of this direction, along with the 'convenience

to the public, safety of federal property for visitors, budgetary concerns regarding paying snow-

removal staff, and paying employees to staff the Post Office…during hours which would

otherwise experience minimal postal-patron traffic.'") (internal citation omitted).  Thus, the

decision to leave the Post Office open satisfies the second prong of the test.

Accordingly, the discretionary function exception applies to the decision to allow 24-hour

access to the self-service machine in the Smithtown Post Office, and the Court therefore lacks

subject matter jurisdiction over this action.[6]  Having found that there is no subject matter

jurisdiction over this case, the Court need not address Plaintiffs' remaining claims.

---

[6] The Court is mindful that most of the cases cited in support of its decision are from outside the
Second Circuit, however, in the absence of any Second Circuit case law counseling against the
approach taken by its sister courts, the Court adopts the reasoning in the cases cited above.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted and

Plaintiffs' cross-motion for summary judgment is denied.  The Clerk of Court is directed to enter

judgment and close this case.

**SO ORDERED.**

Dated: Central Islip, New York               s/ Denis R. Hurley
       August 26, 2020               Denis R. Hurley
                                       United States District Judge